## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| SUPERIOR PARTNERS, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION H-06-CV-3966 |
| | § | |
| NANCY CHANG, ET AL., | § | |
| | § | |
| *Defendants.* | § | |

## MEMORANDUM AND ORDER

Before this court is Plaintiff Superior Partners' Emergency Motion to Remand, or, Alternatively, for Expedited Discovery. (Dkt. 3).  Having considered the motion, the response (Dkt. 18), the reply (Dkt. 20), and the applicable law, the court is of the opinion that the motion should be GRANTED in part, and DENIED AS MOOT in part.

### Background

Plaintiff Superior Partners, representing all stockholders of Tanox who are similarly situated, is a holder of Tanox, Inc. stock.  Defendant Tanox, Inc. is a Delaware biotechnology company headquartered in Houston, TX.  Defendants Nancy T. Chang, Julia Brown, Heinz W. Bull, Tse-Wen Chang, Gary Frashier, Osama Mikhail, Peter G. Traber, and Danong Chen are the current members of Tanox's board of directors.  Defendant Genentech, Inc. is a biotechnology company headquartered in South San Francisco, California.  Defendant Green Acquisition Corporation is a wholly-owned subsidiary of Genentech.

On November 9, 2006, Tanox and Genentech announced a plan to merge.  Tanox filed a preliminary proxy statement with the SEC on November 24, 2006.  On December 5, 2006, Superior Partners filed this action in the District Court of Harris County, Texas.  The complaint alleged that Tanox directors breached fiduciary duties owed to Tanox's stockholders by, among other things, making false or misleading statements or omission in the preliminary proxy statement.  The original complaint also alleged that Genentech aided and abetted the Tanox directors' alleged breaches of fiduciary duty.  The foregoing claims are brought under Delaware law.

On December 7, 2006, Tanox filed its definitive proxy statement with the SEC.  On the same day, Tanox mailed the statement to its stockholders.  One week later, defendants removed this action to this court. (Dkt. 1).  According to the defendants, this court has original jurisdiction over the cause of action pursuant to the Securities Litigation Uniform Standards Act of 1998 ("SLUSA" or "the Act"), 15 U.S.C. § 78bb(f).  On December 19, 2006, Superior Partners amended their original complaint. (Dkt. 2).  In their first amended complaint, Superior Partners base their claims on the recently filed and distributed definitive proxy statement.  The same day, Superior Partners also filed this motion.

**Analysis**

*A.      Securities Litigation Uniform Standards Act ("SLUSA")*

In 1995, Congress enacted the Private Securities Litigation Reform Act ("Reform Act") in response to a perceived harm to markets from frivolous private securities lawsuits. H.R. CONF. REP. NO. 104-369, at 31–32 (1995).  The Reform Act sought to deter these "strike suits" by imposing more stringent procedural and substantive requirements for private securities actions in federal courts. *See Gibson v. PS Group Holdings, Inc.*, No. 00-CV-0372 W(RBB), 2000 WL 777818, at

*2–3 (S.D. Cal. March 8, 2000).  In response, plaintiffs counsel recognized state laws required no such heightened standards and began filing record numbers of securities actions in state courts. H.R. CONF. REP. NO. 105-803, p. 14–15 (1998); *see also Lander v. Hartford Life*, 251 F.3d 101, 108 (2d Cir. 2001).  To close this "loophole," Congress enacted SLUSA, which designates the federal courts as the exclusive venue for nearly all such claims. *See Green v. Ameritrade Inc.*, 279 F.3d 590 (8th Cir. 2002).  SLUSA preempts certain types of securities class actions and provides that they cannot be maintained in any state or federal court in the United States.  Under its preemption provision, SLUSA permits removal and requires dismissal of certain securities class actions:

> (1) Class Action Limitations: no covered class action based upon the statutory or common law of any State or subdivision thereof may be maintained in any State or Federal court by a private party alleging
>
>> (A) a misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security; or
>>
>> (B) that the defendant used or employed any manipulative or deceptive device or contrivance in connection with the purchase or sale of a covered security.

15 U.S.C. § 78bb(f)(1).

SLUSA, therefore, mandates dismissal of any: (1) covered class action; (2) based on state law; (3) alleging a misrepresentation or omission of a material fact or act of deception; (4) in connection with the purchase or sale of a covered security. *See Prager v. Knight/Trimark Group, Inc.*, 124 F. Supp. 2d 229, 231–33 (D.N.J. 2000).  In enacting SLUSA, Congress evinced a clear intent toward broad application of the Act. *See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit*, 126 S. Ct. 1503, 1511–1515; *Zoren v. Genesis Energy, L.P.*, 195 F. Supp. 2d 598, 603 (D. Del.

2002); *see also Gibson*, 2000 WL 777818, at *2–3; *Bertram v. Terayon Commun.*, No. CV 00-12653 SVW RZX, 2001 WL 514358, at *2 (C.D. Cal. Mar. 27, 2001).  Notwithstanding the Act's broad limitation on securities class actions, SLUSA also contains a savings clause, known as the "Delaware carve-out" exception, which preserves certain "covered class actions."[1]  Under section 78bb(f)(3), a "covered class action" based upon the statutory or common law of the State in which the issuer is incorporated may be maintained if it involves:

> (I) the purchase or sale of securities by the issuer or an affiliate of the issuer exclusively from or to holders of equity securities of the issuer; or
>
> (II) any recommendation, position, or other communication with respect to the sale of any issuer that
>
>> (aa) is made by or on behalf of the issuer or an affiliate of the issuer to holders of equity securities of the issuer; and
>>
>> (bb) concerns decisions of such equity holders with respect to voting their securities, acting in response to a tender or exchange offer, or exercising dissenters' or appraisal rights.

15 U.S.C. § 78bb(f)(3)(A)(ii).

If, following removal from state court under section 78bb(f)(2), a federal court determines that the action is preserved under this savings clause, the federal court must remand the action to state court. 15 U.S.C. § 78bb(f)(3)(D) ("In an action that has been removed from a State court pursuant to paragraph (2), if the Federal court determines that the action may be maintained in State court pursuant to this subsection, the Federal court shall remand such action to such State court.").

---

[1]     The "Delaware carve-out" nomenclature comes from *Malone v. Brincat*, 722 A.2d 5 (Del. 1998), a Delaware case in which the court described the savings provisions under 15 U.S.C. § 78bb as being particularly applicable to Delaware law, and, therefore, described them as "Delaware carve-outs." *Id.* at 13.

B.     *Plaintiff's Motion to Remand*

    1.     *Claims Against Tanox*

The parties to this action disagree as to whether the latter of the two Delaware carve-out exceptions applies to claims against Tanox. Superior Partners argues that the claims are subject to the second exception and, therefore, not preempted by SLUSA. The second exception has three requirements. A covered class action may be maintained under SLUSA if it involves: (1) any recommendation, position, or other communication with respect to the sale of any issuer; (2) that is made by or on behalf of the issuer or an affiliate of the issuer to holders of equity securities of the issuer; and (3) concerns decisions of such equity holders with respect to voting their securities, acting in response to a tender or exchange offer, or exercising dissenters' or appraisal rights. *Alessi v. Beracha*, 244 F. Supp. 2d 354, 358 (D. Del. 2003).

Neither the Court of Appeals for the Fifth Circuit nor any other appellate court has addressed this issue. In support of its argument, Superior Partners cites numerous district court cases in which analogous lawsuits were remanded to state court. In *Greaves v. McAuley*, a class action was brought in response to a proxy statement for approval of a merger. *Greaves v. McAuley*, 264 F. Supp. 2d 1078, 1079–80 (N.D. Ga. 2003). In state court, the *Greaves* plaintiffs alleged state law claims that were virtually identical to the claims brought by Superior Partners. *Id.* The *Greaves* defendants removed the class action to federal court, arguing that the lawsuit was preempted by SLUSA. *Id.* On a subsequent motion to remand the action to state court, the district court remanded the action because it found that the second Delaware carve-out exception applied. *Id.* at 1086. In *Derdiger v. Tallman*, a class action was brought after the approval of a merger. *Derdiger v. Tallman*, 75 F. Supp. 2d 322, 323–24 (D. Del. 1999). *Derdiger* plaintiffs alleged that the proxy solicitation statement

prompting the approving vote was misleading and therefore amounted to fraud. *Id.* Following a nearly identical procedural process as in *Greaves* and this case, the district court remanded the action based on the second Delaware carve-out exception. *Id.*

Defendants argue that the time of removal dictates which pleading the district court must consider when deciding whether to remand an action removed from state court. Defendants contend that because Superior Partners' first amended complaint was filed after removal, only allegations in the original complaint should be considered. Moreover, defendants note that the original complaint is based on alleged misrepresentations contained in a preliminary proxy statement filed with the SEC for comment and review. Therefore, defendants urge this court to refuse remand because a preliminary proxy is not a "communication" covered by the first element of the second Delaware carve-out exception. *See Drulias v. ADE Corp.*, No. Civ. A. 06-11033, 2006 WL 1766502, at *5 (D. Mass. June 26, 2006) (holding that the second Delaware carve-out exception did not mandate remand of a class action based solely on alleged misrepresentations in a preliminary proxy statement because the statement was not a "communication").

Preliminary proxy statements filed with the SEC, however, are "communications." A "communication" as used in § 78bb(f)(3)(B)(ii) is not defined by SLUSA. *See* 15 U.S.C. § 78bb(f)(5). Nevertheless, other sources provide ample guidance for concluding that preliminary proxies are in fact communications. Rules promulgated under the 1934 Act dictate that "[a]ll copies of preliminary proxy statements and forms of proxy filed [in accord with SEC requirements] . . . shall be deemed immediately available for public inspection."[2] In addition, Delaware cases

---

[2]         Rule 14a-6(e) states:

(e)(1) Public availability of information. All copies of preliminary proxy statements and forms of

encourage parties to file lawsuits based on preliminary proxies made available on the SEC website to facilitate adjudication prior to the filing of a definitive proxy statement. *See In re HCA Inc. Sharholders Litig.*, C.A. No. 2307-N, at 2–3 (Del. Ch. Oct. 26, 2006) (quoting *Turner v. Bernstein*, 776 A.2d 530, 549 (Del. Ch. 2000) ("Undoubtedly, this court prefers that stockholder plaintiffs bring disclosure claims promptly, particularly in situations where the plaintiffs have access to preliminary proxy materials from the Securities and Exchange Commission in advance of the company's final materials.")). In this day and age, the act of posting information on the internet, making the data available to the public, is tantamount to "communication."  Posters should expect the public to

---

proxy filed pursuant to paragraph (a) of this section shall be clearly marked "Preliminary Copies," and shall be deemed immediately available for public inspection unless confidential treatment is obtained pursuant to paragraph (e)(2) of this section.

(2) Confidential treatment. If action will be taken on any matter specified in Item 14 of Schedule 14A (§ 240.14a-101), all copies of the preliminary proxy statement and form of proxy filed under paragraph (a) of this section will be for the information of the Commission only and will not be deemed available for public inspection until filed with the Commission in definitive form so long as:

(i) The proxy statement does not relate to a matter or proposal subject to § 240.13e-3 or a roll-up transaction as defined in Item 901(c) of Regulation S-K (§ 229.901(c) of this chapter);

(ii) Neither the parties to the transaction nor any persons authorized to act on their behalf have made any public communications relating to the transaction except for statements where the content is limited to the information specified in § 230.135 of this chapter; and

(iii) The materials are filed in paper and marked "Confidential, For Use of the Commission Only." In all cases, the materials may be disclosed to any department or agency of the United States Government and to the Congress, and the Commission may make any inquiries or investigation into the materials as may be necessary to conduct an adequate review by the Commission. . . .

17 C.F.R. § 240.14a-6(e).  Under this rule, preliminary proxy statements "shall be deemed immediately available for public inspection unless confidential treatment is obtained pursuant to paragraph (e)(2) of this section." *Id.* In this case, Tanox did not obtain confidential treatment pursuant to paragraph (e)(2). Tanox's preliminary proxy statement is not marked "Confidential, For Use of the Commission Only." Tanox, Inc. Preliminary Proxy Statement, *available at* http://www.sec.gov/Archives/edgar/data/1099414/000119312506241479/dprem14a.htm.

receive information that is made widely available to everyone via the internet.[3]  Merely because a copy of the preliminary proxy statement is not physically mailed to shareholders does not exclude it from being a "communication."  To distinguish between preliminary and definitive proxies on this basis would ignore post-internet reality.  Today, a posting on a well-known government website accessible to shareholders and others is a "communication."[4]

Even if the preliminary proxy statement was not a "communication," the court finds it can consider Superior Partners' amended complaint which is based on misrepresentations within the definitive proxy statement.  Remand is therefore proper because that statement is clearly a "communication" made by the issuer and its affiliates concerning a vote on the future merger of the issuer with another entity. *See  Greaves*, 264 F. Supp. 2d at 1080; *Derdiger*, 75 F. Supp. 2d at 323–24.  In this case, Superior Partners amended their complaint to base their claims on the definitive proxy after defendants removed the action to federal court.

In *Schuster v. Gardner*, a class action lawsuit was filed in state court alleging that company officers breached their fiduciary duties and aided and abetted the breach of fiduciary duties. *Schuster v. Gardner*, 319 F. Supp. 2d 1159, 1161–62 (S.D. Cal. 2003).  In response, the *Schuster* defendants removed the action to federal court based on SLUSA preemption. *Id.*  The *Schuster* plaintiffs subsequently amended their complaint, narrowing the class to parties who were allegedly misled into not selling their shares. *Id.*  As a result, the amended complaint specifically excluded claims based upon the purchase or sale of securities during the class period. *Id.*  Then, *Schuster* plaintiffs moved

---

[3]      A quick Google search for "Tanox, Inc. + PREM14A," the company name and the SEC's Electronic Data Gathering, Analysis and Retrieval System's (EDGAR) designation for a preliminary proxy statement, resulted in 121 hits.

[4]      *See also Greaves*, 264 F. Supp. 2d at 1083 ("[P[ress releases and [SEC] Form S-4 . . . constitute "communication[s]." (internal quotation marks omitted)).

-8-

for remand, arguing that removal was improper because SLUSA only preempted actions alleging

fraud "in connection with the purchase or sale of a covered security." *Id.*  The *Schuster* court, basing

its decision on the amended complaint, remanded the action. *Id.* at 1165.  The court acknowledged

that subject matter jurisdiction is generally determined by looking at the facts as pled in the

complaint operative at the time the notice of removal is filed. *Id.* at 1163 (citing *Sparta Surgical*

*Corp. v. Nat'l Ass'n of Sec. Dealers, Inc.*, 159 F.3d 1209, 1211 (9th Cir. 1998)); *see also Cavallini*

*v. State Farm Mut. Auto Ins. Co.*, 44 F.3d 256, 264 (5th Cir. 1995).  In some instances, however, the

*Schuster* court recognized that strict adherence to the general principle would work an injustice.[5]

*Schuster*, 319 F. Supp. 2d  at 1163 (citing *Roessert v. Health Net*, 929 F. Supp. 343, 349 (N.D.

Cal.1996) ("[E]ven if jurisdiction had been proper at the time of removal based on the original

complaint, subject matter jurisdiction can always be raised before judgment is entered. If at any point

prior to final judgment the court determines that it lacks subject matter jurisdiction, it must remand

the action to state court.").  The *Schuster* defendants failed to convince the court that plaintiff's

amended complaint was an attempt at forum manipulation or to circumvent SLUSA. *Id.* at 1164.

The *Schuster* court concluded that "not remanding the case to state court would work a manifest

injustice by forcing the plaintiff to litigate a federal securities class action he did not intend to bring."

*Id.* (citing *Abada v. Charles Schwab & Co., Inc.*, 127 F. Supp. 2d 1101, 1103 (S.D. Cal. 2000)).

---

[5]       *Cf. G.F. Thomas Invs., L.P. v. CLECO Corp.*, 317 F. Supp. 2d 673 (W.D. La. 2004) (reviewing whether the
first Delaware carve-out exception applied in a class action which was re-filed after the original class action was
voluntarily dismissed without prejudice in accord with an approved stipulation permitting the plaintiffs to re-file "a state-
court class action against [the defendants] under the Delaware carve-out . . . ."); *see also Braud v. Transport Serv. Co.
of Ill.*, 445 F.3d 801, 808–09 (5th Cir. 2006) ("A federal court . . . may properly remand if the amendment dismissing
the removing defendant was made for legitimate purposes, provided, of course, that CAFA's minimal diversity
requirement is not satisfied after the dismissal of the removing defendant.").

*Schuster* permitted a plaintiff to amend his original complaint and strip the federal court of subject matter jurisdiction.  In the case at hand, Superior Partners amended their complaint to reflect the most current factual basis for their allegations.  There is no indication that Superior Partners, by amending its original complaint, is attempting to forum shop or to circumvent SLUSA.  Clearly, basing their allegations on a definitive rather than a preliminary proxy statement would avoid the result in *Drulias*, if this court agreed with that decision.  That analysis, however, is not dispositive.  Not remanding this case to state court because the first amended complaint was filed after defendants removed this case would work a manifest injustice by forcing Superior Partners to litigate a federal securities class action it did not intend to bring.  Therefore, for the reasons stated above, the second Delaware carve-out exception applies to Superior Partners' claims against Tanox.

2.    *Claims Against Genetech*

Defendants argue that remand is inappropriate regardless of whether or not the second Delaware carve-out exception applies to claims against Tanox because Superior Partners also assert claims against Genetech.  It is undisputed that Genentech is not an "issuer" of Tanox securities, nor is it alleged to be "an affiliate of the issuer."  Defendants argue that remand is improper because claims against Genentech are not covered by any exceptions to SLUSA, and, therefore, the entire action belongs in federal court.  In making this argument, defendants rely on *LaSala v. Bordier et CIE* and *In re Lord Abbett Mutual Funds Fee Litigation*.  In *LaSala*, the trustees of a bankrupt corporation's liquidating trust brought a diversity action against private Swiss banks, asserting state-law claims for aiding and abetting breach of fiduciary duty by the corporation's former principals as well as claims for violation of Swiss money laundering laws. *LaSala v. Bordier et CIE*, 452 F. Supp. 2d 575, 577–78 (D.N.J. 2006).  The *LaSala* court, after concluding that some of the plaintiffs'

claims were preempted by SLUSA, dismissed the action. *Id.* at 591.  In *Lord Abbett*, shareholders in mutual funds brought a class action against a management company and its officers, alleging improper broker compensation practices and asserting claims under the Investment Company Act and state law.  *In re Lord Abbett Mutual Funds Fee Litigation*, No. 04-CV-0559, 2006 WL 3483946, at *1–2 (D.N.J. Dec. 4, 2006).  The *Lord Abbett* court, also concluding that some of the plaintiffs' claims were preempted by SLUSA, dismissed the entire action. *Id.* at *8.  Both courts found that because SLUSA preempted entire "actions," not merely individual "claims," dismissal of the action was appropriate where some, but not all, of the claims were preempted by SLUSA. *See LaSala*, 452 F. Supp. 2d at *588–91; *In re Lord Abbett*, 2006 WL 3482946, at *4–7.  Defendants also cite to *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit*, the most recent Supreme Court decision on SLUSA preemption.  In *Dabit*, the Court indicated that SLUSA applies broadly to preempt certain securities class actions alleging fraud.  *Dabit,* 126 S. Ct. at 1511–1515.

Superior Partners agrees with defendants that SLUSA applies to "actions" rather than individual "claims."  However, Superior Partners argues that the remand provision within SLUSA trumps the removal provision.  Therefore, Superior Partners urges this court to remand the entire action to state court despite the fact that the claims against Genentech are not covered by the second Delaware carve-out exception.

The SLUSA provisions direct a district court to examine a lawsuit in its entirety.  Under the Act, "covered class action[s]" are removable to federal court. 15 U.S.C. § 78bb(f)(2).  The term "covered class action" refers to "any single lawsuit" or "any group of lawsuits." 15 U.S.C. § 78bb(f)(5)(B).  Once a "covered class action" has been removed to a federal court, if the Delaware carve-out applies, the federal court is required to "remand such action," not such claim, to state court.

-11-

15 U.S.C. § 78bb(f)(3)(A), (D).  Pursuant to the sequencing of the analysis in the statute, this court must first determine if the entire action involves allegations that permit removal. 15 U.S.C. § 78bb(f)(1), (2).  If removal is appropriate, the court must then determine if any exception in 15 U.S.C. § 78bb(f)(3) preserves jurisdiction in state court. If jurisdiction in state court is preserved, then the federal court "shall remand such action." 15 U.S.C. § 78bb(f)(3)(D).  Thus, if an action has been removed, but part of the action fits the Delaware carve-out, "the action may be maintained in State court" and "the Federal court shall remand such action to such State court." *Id.*  In essence, according to the plain language of the statute, the court is to consider the propriety of remand after determining the propriety of removal.

> *Notwithstanding paragraph (1) or (2)*, a covered class action described in clause (ii) of this subparagraph that is based upon the statutory or common law of the State in which the issuer is incorporated (in the case of a corporation) or organized (in the case of any other entity) may be maintained in a State or Federal court by a private party.

15 U.S.C. § 78bb(f)(3)(A)(i) (emphasis added).[6]  If remand is appropriate, the entire lawsuit must be remanded to state court, irrespective of the court's finding that some claims are preempted by

---

[6]        A covered class action described in clause (ii) is one that involves:
(I) the purchase or sale of securities by the issuer or an affiliate of the issuer exclusively from or to holders of equity securities of the issuer; or

(II) any recommendation, position, or other communication with respect to the sale of securities of an issuer that--

> (aa) is made by or on behalf of the issuer or an affiliate of the issuer to holders of equity securities of the issuer; and

> (bb) concerns decisions of such equity holders with respect to voting their securities, acting in response to a tender or exchange offer, or exercising dissenters' or appraisal rights.

15 U.S.C. § 78bb(f)(3)(A)(ii).

SLUSA.  "In an action that has been removed from a State court pursuant to paragraph (2), if the Federal court determines that the action may be maintained in State court pursuant to this subsection, the Federal court *shall remand such action* to such State court." 15 U.S.C. § 78bb(f)(3)(D) (emphasis added).  The court concludes that the remand provision trumps the removal provision, and therefore the entire lawsuit must be remanded. *Greaves*, 264 F. Supp. 2d at 1085.

This conclusion is in line with *Dabit,* and does not contradict the holdings in *LaSala* and *Lord Abbett*.  While the *Dabit* Court found in favor of broad SLUSA preemption, it noted that "Congress did not by any means act cavalierly." *Dabit*, 126 S. Ct. at 1514 (internal quotation marks omitted).  The Court explained, "The statute carefully exempts from its operation certain class actions based on the law of the State in which the issuer of the covered security is incorporated . . . ." *Id.* (citing 15 U.S.C. § 78bb(f)(3)(A)).  The Court concluded, "The existence of th[is] carve-out[] . . . evinces congressional sensitivity to state prerogatives in this field . . . ." *Id.*  Both *LaSala* and *Lord Abbett* come to the same general conclusion; SLUSA preemption is broad.  These cases, however, did not address the interplay of the SLUSA carve-outs with the Act's broad preemption.

In *Greaves*, the court concluded that the state-law claims against IRT, the company in which plaintiffs owned shares, fell within the purview of the second Delaware carve-out exception. *Greaves*, 264 F. Supp. 2d at 1083.  The court then found that the aiding and abetting claims against Equity, the company with which IRT sought to merge, did not fall under the carve-out; these claims, therefore, were preempted by SLUSA. *Id.* at 1084.  Following a near identical analysis as above, the *Greaves* court concluded that the SLUSA remand provision trumped its removal provision. *Id.* at 1085.  The court found that because SLUSA applies to actions rather than individual claims, if the remand provision required a federal court to remand the action to state court, it must do so despite

additional claims to which the remand provision did not apply. *Id.* at 1086.  Therefore, the *Greaves*

court remanded the entire action to state court. *Id.*

       *Greaves* is virtually identical to the case at hand.[7]  Superior Partners' claims against Tanox

fall under the second Delaware carve-out exception.  Superior Partners' claims against Genetech do

not.  Because SLUSA's remand provision trumps its removal provision, *see Greaves*, 264 F. Supp.

2d at 1085, and because SLUSA applies to "actions" rather than individual "claims," *see LaSala*, 452

F. Supp. 2d at 588–91; *In re Lord Abbett*, 2006 WL 3482946, at *4–7, the entire action must be

remanded to the state court.

**Conclusion**

       For the foregoing reasons, plaintiff Superior Partners emergency motion to remand is

GRANTED.  This case is REMANDED to Harris County District Court.  Plaintiff Superior Partners'

alternative motion for expedited discovery is DENIED AS MOOT.


       Signed at Houston, Texas on January 8, 2007.

_____

Gray H. Miller
United States District Judge

---

[7]     *Greaves* addressed SLUSA's provisions amending the 1933 Act.  In the case at hand, at issue are SLUSA provisions amending the 1934 Act.  SLUSA, however, "amends the 1933 Act and the 1934 Act in substantially identical ways." *Dabit*, 126 S. Ct. at 1511 n.6.  Therefore, the analysis in *Greaves* is pertinent to the analysis of SLUSA provisions amending the 1934 Act.

-14-